UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- x
HENRY BELTRAN,

                Plaintiff,

- against -

TECHTRONIC INDUSTRIES NORTH
AMERICA, INC., ONE WORLD
TECHNOLOGIES, INC., and RYOBI
TECHNOLOGIES, INC.,

                Defendants.
----------------------------------------------------------- x

**MEMORANDUM & ORDER**

13 CV 5256 (RJD) (RER)

DEARIE, District Judge

      Plaintiff Henry Beltran seeks damages for the defective design of a table saw, bringing claims under strict products liability and negligence. Beltran was injured when his hand made contact with the table saw's blade. Defendants Techtronic Industries North America, Inc., One World Technologies, Inc., and Ryobi Technologies, Inc. (collectively, the "Defendants") move for summary judgment on the grounds that the plaintiff's use of the table saw without a blade guard constituted a substantial modification. For the reasons stated below, Defendants' motion for summary judgment is denied.

## BACKGROUND

      In the summer of 2007, plaintiff Beltran purchased a Ryobi table saw, Model BTS10 (the "Ryobi Saw"), for personal use. Defs.' Rule 56.1 Statement, at ¶¶ 2, 8, ECF No. 29. The Ryobi Saw was designed, manufactured, and distributed by Defendants. Ex. J to Affirmation of Roasario M. Vignali in Support of Defs.' Motion for Summary Judgment, ECF No. 30-10, at 1, ¶ 1 [hereinafter "Defs.' Aff."] (affidavit of Thomas Wayne Hill, Senior Director of Product Safety for One World Technologies, Inc.). As distributed by the Defendants, the Ryobi Saw included

what is called a "3-in-1" blade guard, the purpose of which is to reduce the likelihood of injuries from operating accidents such as "kickbacks."[1] Defs.' Rule 56 Statement at ¶ 12-13; Defs.' Aff. at Ex. H (Ryobi Saw's operator's manual). Three functions of this blade guard are intended to provide protection during such an incident: (1) a clear plastic cover, known as a blade guard, encases the blade, preventing users' hands from making contact with the blade; (2) a crescent-shaped piece of metal, known as a riving knife, sits behind the saw, rising and falling with the blade, helping to keep the cut open; and (3) toothed plates, known as anti-kickback pawls, grip the wood to stop the work piece from being thrown back toward the front of the saw. Defs.' Rule 56 Statement at ¶ 12-13; Defs.' Aff., Ex. H at 7-8 (providing a glossary of woodworking terms in operator's manual).

Notably, the Ryobi Saw's blade guard is removable. This is because the blade guard is incompatible with the execution of "non-through" cuts (*i.e.*, cuts that do not go completely through the work piece). Defs.' Aff., Ex. H, at 8, 16, 19. Furthermore, the Ryobi Saw is distributed without the blade guard pre-installed, meaning that new table saw users must attach the blade guard assembly upon purchase. See id. at 11-12 (providing instructions for blade guard assembly).

However, plaintiff asserts that, because it is difficult to remove and reattach the blade guard before and after every non-through cut, the overwhelming majority of table saw users leave the blade guard permanently off of the saw. Ex. B to Pl.'s Mem. of Law in Opposition to Defs.' Motion for Summary Judgment, ECF No. 32-2, at 3 ¶ 5 [hereinafter "Pl.'s Opposition"]. Plaintiff has also testified that this blade guard was not included in the packaging of the Ryobi

---

[1] A kickback is a hazard that can occur when the blade binds or stalls, throwing the work piece back towards the blade operator. Defs.' Aff., Ex. H at 6, 8 (defining "kickback" in Ryobi Saw operator's manual). This can happen when, for example, there is tension on the blade. Id.

Saw that he purchased, Defs.' Aff., Ex. E at 45-46, 48-49 (Beltran deposition), an allegation of a serious lapse in quality control that the plaintiff's own expert finds "not . . . very credible," Defs.' Aff., Ex. F at 34 (Holt deposition). Regardless of the reason for its absence, however, it is undisputed that no blade guard was on the Ryobi Saw at the time of plaintiff's accident. Defs.' Rule 56 Statement at ¶ 6.

On April 20, 2013, plaintiff Beltran used his Ryobi Saw to make a "through" cut (*i.e.*, cut completely through the work piece) on a four-foot-long piece of plywood for a home improvement project. Id. at ¶¶ 1, 3-4; Defs.' Aff., Ex. H at 8. Plaintiff testified that when he was a little more than halfway through the plywood, he felt resistance in the wood (a warning sign for a kickback). Defs.' Aff., Ex. E at 79-80 (Beltran deposition). Beltran pulled the wood back before continuing on. Id. When he was about 90% through the cut, the board "suddenly jumped" up and Beltran reacted by using his left hand to push the plywood back down. Defs.' Rule 56 Statement at ¶ 5; Defs.' Aff., Ex. E at 75-77 (Beltran deposition). Instead of hitting plywood, however, Beltran's hand came down on the Ryobi Saw's blade, resulting in serious injury. Id.

Plaintiff claims that the wood was thrown upwards as the result of a kickback. Defendant argues that the wood "jumped" because the work piece was too long for the table and the heavy overhang pushed the uncut portion of the plywood up towards Beltran. Defs.' Aff., Ex. F, at 12-14 (Holt deposition). Plaintiff's expert, Darry Holt, states that it is likely that both events occurred. Id. That is, the kickback caused Beltran to lose control of the work piece, which, in turn, caused the weight of the plywood that had already been cut to push the uncut portion up towards Beltran. Id.

Following his accident, plaintiff initiated this action against Defendants, bringing claims under strict products liability and negligence—for defective design of the Ryobi Saw and failure

3

to warn—as well as implied warranty claims. Complaint, at ¶¶ 27-37. However, plaintiff voluntarily consented to the dismissal of his strict products liability and negligence claims—to the extent they are based on a failure to warn—and his implied warranty claims. Pl.'s Opposition, at 14.

Plaintiff's expert, Mr. Holt, conceded that the Ryobi Saw complied with regulatory requirements at the time of its manufacture. Id. at 31-32. Furthermore, Mr. Holt admitted that plaintiff's injury in this case "probably would not have happened" if the blade guard had been in place. Defs.' Aff., Ex. F at 38-39 (Holt deposition). Specifically, Mr. Holt testified that Beltran would still have experienced a kickback, and the work piece could still have tipped the table, but "even if [Beltran's hand] was addressed above the blade, his hand would contact the top of the guard," not the blade. Defs.' Aff., Ex. F, at 38-39 (Holt deposition). Mr. Holt also noted that this was "not to say [Beltran] couldn't get his hand somehow under the lifted guard," but "it probably would not have happened." Id. at 39.

However, Mr. Holt nonetheless stated that the Ryobi Saw was unreasonably dangerous (and therefore defectively designed) because it failed to incorporate two critical safety features. Pl.'s Opposition, Ex. C, Pt. 1, at 3-4, ¶¶ 8-13 (Holt declaration). First, Mr. Holt argues that a pre-installed, independent riving knife would have provided greater safety to users because it would have offered protection even when the blade guard was removed. Id. at 3, ¶¶ 9-10. Second, the Ryobi Saw did not include so-called "Saw Stop" technology (a flesh-detection mechanism that stops the blade within milliseconds after contact with a person's body), which Mr. Holt argues was feasible at the time of the Ryobi Saw's manufacture and would have reduced Beltran's

injury to essentially a "nick" (five-eighths of an inch).[2] Id. at 4, ¶¶ 12-13; Defs.' Aff., Ex. F at 52-60 (Holt deposition).

## DISCUSSION

Summary judgment is appropriate where "the evidence, viewed in the light most favorable to the party against whom it is entered, demonstrates that there are no genuine issues of material fact and that the judgment is warranted as a matter of law." Delaney v. Bank of Am. Corp., 766 F.3d 163, 167 (2d Cir. 2014) (quoting Global Networks Commc'ns, Inc. v. City of New York, 562 F.3d 145, 150 (2d Cir. 2009)); see also Fed. R. Civ. P. 56(a). In deciding whether summary judgment is warranted, the Court must "resolve all ambiguities and draw all reasonable inferences against the movant." Id. (quoting Aulicino v. N.Y.C. Dep't of Homeless Servs., 580 F.3d 73, 79-80 (2d Cir. 2009)). "A dispute about a 'genuine issue' exists . . . where the evidence is such that a reasonable jury could decide in the non-movant's favor." Id. (quoting Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008)).

Defendants argue that under New York law (which the parties agree applies here), plaintiff's strict products liability and negligence claims for defective design must be dismissed because Beltran's use of the Ryobi Saw without the blade guard constituted a substantial modification that was the proximate cause of his injury.

---

[2] Plaintiff has also provided a declaration from Stephen Gass, the inventor of Saw Stop technology (created as a general response to the many cases in which he is asked to testify), which states his "opinion that any table saw manufactured in 2002 or later without some type of active injury mitigation technology to protect the operator was and is defective and unreasonably dangerous." Pl.'s Opposition, Ex. C, Pt. 8, at 73, ¶ 10.

Notably, Mr. Holt testified that the cost of Saw Stop tables available at the time of the Ryobi Saw's manufacture was anywhere between $1,600 and $4,000, a price which is well above what plaintiff Beltran paid for his Ryobi Saw. Defs.' Aff., Ex. F, at 53-55 (Holt deposition). However, this price difference could be attributed to factors other than merely the cost of the flesh detection technology.

5

The New York Court of Appeals has held that manufacturers may not be held liable under a strict products liability or negligence cause of action where, after a product leaves their possession and control, there is (1) "a subsequent modification which substantially alters the product," and (2) this modification "is the proximate cause of plaintiff's injuries." Robinson v. Reed-Prentice Div. of Package Mach. Co., 49 N.Y.2d 471, 475, 403 N.E.2d 440, 441 (1980).

However, the New York Court of Appeals has qualified this defense in situations where "a product was purposefully manufactured to permit use without a safety feature." Colon ex. rel. Molina v. BIC USA, Inc., 199 F. Supp. 2d 53, 87 (S.D.N.Y. 2001) (citing Lopez v. Precision Papers, Inc., 67 N.Y.2d 871, 873, 492 N.E.2d 1214, 1215 (1986); see also Gunn v. Hytrol Conveyor Co., Inc., No. 10-CV-00043 (JG), 2013 WL 2249241, at *10 (E.D.N.Y. May 22, 2013). Thus, "where a safety feature is designed to be removable, a jury question can exist as to whether the product was defectively designed." Guard Ins. Group Inc. v. Techtronic Indus. Co., Ltd., No. 11-CV-6254 (DGL), 2015 WL 293622, at *3-4 (W.D.N.Y. Jan. 23, 2015); see also Saladino v. Stewart & Stevenson Servs., Inc., No. 01-CV-7644 (SLT) (JMA), 2007 WL 4285377, at *8 (E.D.N.Y. Dec. 3, 2007) (summarizing the Lopez court's qualification of Robinson as requiring three elements: "(1) [the] safety device[] [is] easily removable; (2) removal of the safety device[] enhances the product's utility; and (3) the product was purposefully designed to be operated without the safety device").

A. Substantial Modification

The first element of the substantial modification defense turns on whether the removal of the blade guard from the Ryobi Saw constituted a material alteration that substantially changed the condition of the saw.

6

Applicable case law has focused on the extent of the modification of the safety feature, as well as whether the product was designed to function without the safety feature in place. For example, courts have found substantial modification where (i) plaintiff removed the hinges from a saw's safety guard and replaced them with a bungee cord, Wick v. Wabash Holding Corp., 801 F.Supp.2d 93, 104-05 (W.D.N.Y. 2011), (ii) plaintiff's employer wedged a table saw's moveable blade guard open with a piece of wood, Wyda v. Makita Elec. Works, Ltd., 232 A.D.2d 407, 408 (2d Dep't 1996), and (iii) a safety guard removed from a meat grinder had been affixed with "three fairly heavy rivets which would have to be removed forcefully," Darsan v. Guncalito Corp., 153 A.D.2d 868, 870 (2d Dep't 1989).

Conversely, courts have found summary judgment inappropriate where (i) plaintiff or a third party removed a blade guard from a table saw and the table saw was operable without it, Forssell v. Lerner, 101 A.D.3d 807, 809 (2d Dep't 2012), (ii) plaintiff removed a chainsaw's safety feature, which was designed to prevent kickbacks, but showed that the manufacturers had provided saws to third parties with this safety feature removed, to increase the saw's productivity, O'Bara v. Piekos, 161 A.D.2d 1118, 1120 (4th Dep't 1990), and (iii) plaintiff removed an adjustable and easily detached sweep guard from an incline press, Ayala v. V & O Press Co., 126 A.D.2d 229, 233-234 (2d Dep't 1987).

Here, there is no dispute that the blade guard was designed to be removed for "non-through" cuts. However, Defendants argue that because users are able (and, indeed, repeatedly warned) to execute "through" cuts with the blade guard in place, Beltran's operation of the Ryobi Saw without its blade guard to make a "through" cut constituted a material alteration that substantially changed the condition of the saw.

7

In a recent Western District of New York case involving another plaintiff injured while using a Ryobi table saw to execute a "through" cut without its blade guard, Judge Larimer held that "the relatively easy removability of the blade guard gives rise to an issue of fact as to whether the saw was defectively designed." Guard, 2015 WL 293622, at *2-3. Judge Larimer acknowledged that the blade guard was designed to be removed only for "non-through" cuts, but noted "[if] a safety device is designed to be removed, *even for limited, specified uses* of the product, then the removal of the device may not constitute a 'material modification' of the product." Id. at 3 (citing Lopez, 67 N.Y.2d at 873) (emphasis added). For the reasons discussed further below, this Court agrees with Judge Larimer's reasoning.

Defendants attempt to distinguish Guard by arguing that this is not a case about the blade guard's *removal*, but rather a case about the blade guard's *non-use*. Stated differently, Defendants argue that plaintiff cannot benefit from cases like Guard and Lopez because he did not remove the blade guard to increase the saw's functionality. Rather, he simply never used the blade guard in the first place.

However, the Court finds this distinction to be unpersuasive in this case for two reasons. First, Guard was also a case about the blade guard's non-use. Guard, 2015 WL 293622, at *1 (noting that the plaintiff "testified that he 'never saw' the [blade] guard during" his use of the table saw). Second, the point of Lopez and its more contemporary applications, like Guard, is that there are tradeoffs when a product's safety mechanism is not permanently affixed. That is, a product may be defectively designed if the removability of its safety features, though providing increased utility, nonetheless makes the product unreasonably dangerous. See LaPaglia, 143 A.D.2d at 177 ("Where . . . a product is 'purposefully manufactured to permit its use without the safety guard' . . . it is for the jury to determine the scope of the product's intended purposes and

8

whether the product was not reasonably safe when placed in the stream of commerce.") (citing Lopez, 67 N.Y.2d at 873). Therefore, whatever the reason for the blade guard's absence at the time of Beltran's accident, a jury could determine that having a removable blade guard on the Ryobi Saw made the product unreasonably dangerous because of the risk to users operating the saw without this safety feature in place. See, e.g., Guard, 2015 WL 293622, at *3 (noting that where "a safety device is *designed* to be removed," "a jury could find that it was the defective design of the saw, and not the failure to have the blade guard in place, that proximately caused plaintiff's injury") (emphasis in original) (citing LaPaglia v. Sears Roebuck and Co., 143 A.D.2d 173, 177, 531 N.Y.S.2d 623 (2d Dep't 1988)).

Nor is the Court persuaded by Defendants' citations to Heimbuch v. Grumman Corp., in which the Second Department held that "any alleged defect in the design of [a] gas assist device" for lifting the hood of a vehicle "was not the proximate cause" of a plaintiff's injuries, where the plaintiff admitted that the gas assist device was not in her truck at the time of her accident. 51 A.D.3d 865, 867, 858 N.Y.S.2d 378 (2d Dep't 2008). When a design defect claim asserts that a product was unreasonably dangerous because its safety feature was designed to be removable, it follows that the risk of harm lies in use of the product without that safety feature in place. See Forssell, 101 A.D.3d at 808-09 (holding that "a triable issue of fact exists as to whether the table saw was purposely designed to permit use without the blade guard," even though the defendant's submissions established that the saw was distributed with a blade guard, *which the plaintiff had never received* because he bought the saw secondhand).

In sum, the Court concludes that the "relatively easy removability of the blade guard gives rise to an issue of fact as to whether the [Ryobi Saw] was defectively designed." Guard,

2015 WL 293622, at *3. Accordingly, a reasonable juror could conclude that Beltran's use of the Ryobi Saw without the blade guard was not a substantial modification of the saw.

B. Proximate Cause

As in Guard, "[t]his ruling renders it unnecessary to reach [D]efendants' additional argument that the Court should rule, as a matter of law, that [Beltran]'s removal of, or failure to install, the blade guard proximately caused plaintiff's injury." Id.; see also Robinson, 49 N.Y.2d at 475; Wyda, 232 A.D.2d at 408 (finding that wedging a table saw's blade guard open with a piece of wood was a substantial modification and therefore granting summary judgment to the defendant because "[t]here [wa]s no contention that the accident would have occurred if the guard had not been disabled").

Furthermore, recent cases applying New York law have noted that design defect claims can survive—even where the removal of the safety guard permitted users' bodies to come into contact with the machinery—when the plaintiff argues that the machinery failed to incorporate other safety features that would have reduced the likelihood of injury. See, e.g., Guard, 2015 WL 293622, at *4 ("Even if the absence of the blade guard contributed to [plaintiff]'s injury, . . . there are also questions of fact as to whether the failure to incorporate" flesh-detection technology and "additional safety features were also proximate causes of [plaintiff's] injury.");[3] Hoover v. New Holland N. Am., Inc., 23 N.Y.3d 41, 59, 11 N.E.3d 693, 705 (2014) (noting that "expert evidence raised a question whether [the] failure to replace the [safety] shield [on a post hole digger] alone caused plaintiff's injuries, or whether [this] pointed to a failure on defendants'

---

[3] Notably, Judge Larimer supported this conclusion by citing a recent Northern District of Illinois case that allowed Mr. Holt—also the expert for the plaintiff in this case—to testify regarding his opinion that plaintiff's injuries could have been prevented had his saw been equipped with flesh-detection technology. 2015 WL 293622, at *4 (citing Wielgus v. Ryobi Technologies, Inc., No. 08-CV-1597 (YBK), 2012 WL 3643682, at *2-*6 (N.D.Ill. Aug. 23, 2012)).

10

part in selling and distributing the digger with a defectively designed shield," insofar as the shield was not designed to last the life of the digger).

In this case, plaintiff's expert, Mr. Holt, admitted that Beltran's injury "probably would not have happened," if the blade guard had been in place. Furthermore, Mr. Holt conceded that the Ryobi Saw complied with regulatory requirements at the time of its manufacture.[4] However, Mr. Holt nonetheless stated that the Ryobi Saw was unreasonably dangerous (and therefore defectively designed) because it failed to incorporate certain additional safety features, such as an independent, pre-installed riving knife and flesh-detection technology.

Accordingly, drawing all reasonable inferences in favor of plaintiff, the Court finds that he has provided sufficient evidence that, if proven, would permit a reasonable juror to conclude that Defendants' failure to include these additional safety features in the Ryobi Saw was also a proximate cause of Beltran's injuries.

---

[4] Defendants cite Lamb v. Kysor Indus. Corp., 305 A.D.2d 1083, 1084 (4th Dep't 2003), to argue that products that meet industry standards at the time of their manufacture are not defectively designed. However, this overstates Lamb's holdings. The court in Lamb held that the plaintiffs had "failed to raise a triable issue of fact whether the [saw] was defectively designed based on the alleged lack of adequate guarding," because "the original saw guard met industry standards at the time of manufacture," and the plaintiffs' suggested design change to the guard "would have defeated the functional utility of the saw." Id. However, the Lamb court still found that the plaintiffs had "raised a triable issue of fact," as to "whether the saw was unreasonably dangerous for its intended use as a result of its lack of a 'kill' switch." Id.

11

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is denied, with respect to plaintiff's strict products liability and negligence claims, to the extent these claims are based on a defective design argument. On the consent of the parties, the Court dismisses plaintiff's strict products liability and negligence claims—to the extent they are based on a failure to warn—and plaintiff's implied warranty claims.


SO ORDERED.

Dated: Brooklyn, New York
       June 11, 2015

                                        /s/ Judge Raymond J. Dearie

                                        RAYMOND J. DEARIE
                                        United States District Judge